<u>NOT FOR PUBLICATION</u>

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **RK ENVIRONMENTAL, LLC,** | |
| **Plaintiff,** | Civil Action No.: 2:15-cv-3201 (JLL) (JAD) |
| **v.** | |
| **MICHAEL LLOYD and FOOD AND DRUG AND THE BUG, LLC,** | **REPORT AND RECOMMENDATION** |
| **Defendants.** | |

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court upon Defendant Food and Drug and the Bug's ("Defendant FDB")[1] Motion to Dismiss this matter for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or to transfer this matter to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  (ECF No. 5).  The Hon. Jose L. Linares, U.S.D.J., referred the Motion to this Court for a Report and Recommendation.  Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this matter.  Upon careful consideration of the parties' submissions, and for the reasons stated below, it is the recommendation of this Court that Defendant FDB's Motion to Dismiss, (ECF No. 5), be **GRANTED.**

**I.    BACKGROUND**

Plaintiff RK Environmental, LLC ("Plaintiff") organized under the laws of New Jersey with its principal place of business in New Jersey, is an LLC that "specializes in pest management

---

[1]  The parties do not dispute that Defendant Michael Lloyd is subject to personal jurisdiction in this District.

and food safety consulting." (Compl., ECF No. 1, ¶¶ 1, 5). Defendant FDB is a Massachusetts LLC, also specializing in pest management, whose members are all citizens of Massachusetts, with its principal place of business in Massachusetts. (Id. ¶¶ 3-4; Dauksevicz Decl., ECF No. 5-2, ¶¶ 3, 4). On December 2, 2013, Plaintiff hired Massachusetts resident Michael Lloyd ("Defendant Lloyd") as a "pest management specialist." (Compl., ECF No. 1, ¶¶ 2, 6). At the time he was hired, Defendant Lloyd executed a Confidentiality and Non-Solicitation Agreement (the "Agreement"), which states, in relevant part:

> 3(a) Except as required for the performance of his/her job duties, during the term of this Agreement and forever thereafter, Employee will keep confidential and will not, directly or indirectly, by act or by omission, disclose to any person or entity any Confidential Information whatsoever, whether contained in documentary, electronic or any other form, or use any Confidential Information in any way other than in connection with the business and affairs of RK Environmental.

> 4(a) Except for RK Environmental's benefit, during Employee's employment and for a period of eighteen (18) months after the termination of Employee's employment for any reason, Employee may not, directly or indirectly, by initiating contact or otherwise, communicated, attempt to communicate, or assist others in communicating with any customer of RK Environmental for the purpose of, or relating in any way to, offering, selling, or providing such customer any services and/or products related to the business of RK Environmental.

> 4(b) During Employee's employment and for a period of eighteen (18) months after the termination of Employee's employment for any reason, Employee may not, directly or indirectly, by initiating contact or otherwise, entice, solicit, or encourage any customer of RK Environmental to reduce its business relationship with RK Environmental, refrain from establishing or expanding a business relationship with RK Environmental, or otherwise take any steps that would tend to divert business away from RK Environmental.

(Id. ¶ 6). The Agreement also states the following:

> This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey, without regard to any conflict of law rules. The Parties agree that any suit, action or other legal proceeding arising out of or relating to this Agreement shall be brought in a court of competent jurisdiction located within the State of New Jersey. The Parties agree and consent to the jurisdiction and venue of each such court in any such suit, action or proceeding.

(Supp. Hirsch Decl., ECF No. 14-1, at 6, ¶ 16).  During the course of his employment with Plaintiff, Defendant Lloyd allegedly "gained a detailed understanding of [Plaintiff's] proprietary commercial pest control program, and learned other valuable and confidential business information[.]"  (Compl., ECF No. 1, ¶ 14).

On December 1, 2014, approximately one year after beginning his employment with Plaintiff, Defendant Lloyd resigned, via text message, and informed Plaintiff "that he had 'come into some money and would be taking a few months off.'"  (Id. ¶ 15).  Plaintiff alleges that "as a valued employee, [Plaintiff] offered to hold [Defendant] Lloyd's position until his return. [Defendant] Lloyd declined and stated rather, that when he was ready to return, he was going to take a supervisory position at a small pest control company owned by a friend."  (Id.).  Plaintiff soon learned, however, that Defendant Lloyd "immediately commenced employment with [Defendant] FDB, a direct competitor."  (Id. ¶ 16).

Plaintiff alleges that Defendant Lloyd and Defendant FDB (collectively "Defendants") "unfairly solicited, and continue to unfairly solicit, [Plaintiff's] clients in violation of [Defendant] Lloyd's contractual and [Defendant] FDB's common law obligations, causing harm to [Plaintiff's] business, reputation, and customer relationships."  (Id. ¶ 4).  Accordingly, on March 20, 2015, Plaintiff filed its Complaint against Defendants in the Superior Court of New Jersey, Law Division, Bergen County, alleging seven causes of action.  (Compl., ECF No. 1).  Specifically, Plaintiff contends that Defendants misappropriated confidential information, violated the New Jersey Trade Secrets Act, and engaged in unfair competition.  (Id. ¶¶ 35-43, 48-51, 58-60).  Plaintiff further alleges that in failing to maintain confidentiality and in soliciting Plaintiff's clients, Defendant Lloyd breached the Agreement and the implied Covenant of Good Faith and Fair Dealing, (id. ¶¶ 23-34), and that Defendant FDB tortiously interfered with Plaintiff's economic gain by

disregarding the terms of the Agreement.  (Id. ¶¶ 48-51).  Plaintiff also seeks to recover under the doctrine of unjust enrichment.  (Id. ¶¶ 44-47).

On May 7, 2015, Defendants removed the action to this Court.  (Notice of Removal, ECF No. 1).  Shortly thereafter, on May 19, 2015, Defendant FDB filed the instant Motion to Dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).  (ECF No. 5).  Defendant FDB argues that it is not subject to the personal jurisdiction of this Court because it lacks the requisite minimum contacts with New Jersey, (Def. Br., ECF No. 5-1, at 2), and because, as a non-signatory to the Agreement, it is not bound by the Agreement's forum selection clause.  (Def. Rep. Br., ECF No. 13, at 6-7).  Conversely, Plaintiff contends that Defendant FDB is bound by the forum selection clause of the Agreement, even though it is a non-signatory, because Defendant FDB had express knowledge of the Agreement and the Defendants "actively solicited Plaintiff's customers and utilized [Plaintiff's] confidential and proprietary information in violation of the Agreement."  (Pl. Opp. Br., ECF No. 10, at 1).  The Court shall first address whether Defendant FDB is subject to personal jurisdiction in this district.

## II.    LEGAL STANDARD AND DISCUSSION

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper."  Metcalfe v. Renaissance Marine, Inc., 566 F. 3d 324, 330 (3d Cir. 2009) (internal citations omitted).  Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'prima facie case of personal jurisdiction'", Haffen v. Butler Specialities, Inc. et al., No. 10-cv-2833 (DMC), 2011 U.S. Dist. LEXIS 21581, *7 (D.N.J. March 3, 2011) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F. 3d 93, 97 (3d Cir. 2004)), and the court "is required to accept the plaintiff's allegations as true, and is to construe

disputed facts in favor of the plaintiff." Metcalfe, 566 F. 3d at 330 (internal citations omitted). Additionally, "if the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." Haffen, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" Wellness Publ'g v. Barefoot, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc., 384 F. 3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id. (citing N.J. Ct. R. 4:4-4(c)). The United States District Court for the District of New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F. 3d at 334. A court may exercise general jurisdiction over a non-resident corporation when that company's "'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations v. Brown, 131 S. Ct. 2846,

2851 (2011)).  "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'"  <u>Miller Yacht Sales, Inc.</u>, 384 F.3d at 96 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)).

Plaintiff does not contend that Defendant FDB is subject to the general jurisdiction of this Court, or that it has the requisite minimum contacts with New Jersey that it may be subject to specific jurisdiction on the basis of those contacts.  For its part, Defendant FDB maintains that it does not have any offices, real property, mailing address, telephone listing or bank accounts in the State of New Jersey, neither has it ever solicited business in New Jersey, nor have any clients from New Jersey .  (Dauksevicz Decl., ECF No. 5-2, ¶¶ 5-8).

Rather, Plaintiff argues that Defendant FDB is subject to personal jurisdiction in New Jersey because it had "express knowledge of the . . . Agreement entered into between [Defendant Lloyd] and [Plaintiff] which contained an exclusive forum selection clause, [and Defendant] FDB recruited and hired [Defendant] Lloyd, and in concert with him actively solicited Plaintiff's customers and utilized [Plaintiff's] confidential and proprietary information in violation of the Agreement."  (Pl. Opp. Br., ECF No. 10, at 1).  Plaintiff argues that "[i]t is this contractual relationship and [Defendant] FDB's tortious interference therewith that form the basis of this action and under well settled Third Circuit law, provides for personal jurisdiction over FDB in this state."  (<u>Id.</u>).  Defendant FDB "is bound by the forum selection clause in the Agreement because it is so closely related to the dispute at issue herein" and "its actions are so inextricably intertwined

with those of [Defendant] Lloyd, such that [Defendant] FDB clearly foresaw it would be bound by the forum selection clause." (Pl. Opp. Br., ECF No. 10, at 9).[2]

This Court agrees that the disposition of this Motion rests on whether or not a forum selection clause can be enforced against a non-signatory to the underlying Agreement. The forum selection clause in the Agreement between Plaintiff and Defendant Lloyd requires the parties to the Agreement to litigate "any suit, action, or other legal proceeding arising out of or relating" to the Agreement in a New Jersey court. (Compl., ECF No. 1, at 8-9, ¶ 12) (quoting Ex. A, ECF No. 14-1, at 6, ¶ 16). By entering into a forum selection clause, a party can waive any challenges to personal jurisdiction in a given forum, thereby obviating the need for the Court considering a Rule 12(b)(2) motion to conduct a traditional minimum contacts analysis. See Cambridge Mgmt. Grp. v. Baker, No. 12-3577 (NLH), 2013 U.S. Dist. LEXIS 44055, *36, n. 8 (D.N.J. Mar. 28, 2013) ("Having determined that the Wilson Defendants are bound by the forum selection clause and the express waiver of personal jurisdiction [contained in the parties' agreements] . . . the Court need not assess Defendants' arguments regarding whether sufficient minimum contacts exist between the Wilson Defendants and the state of New Jersey."). Given the United States Supreme Court's clear preference for enforcement of contractual forum selection clauses, Atlantic Marine Constr. Co., Inc. v. United States Dist. Court, 134 S. Ct. 568 (2013), if a party has contractually consented to jurisdiction in a given forum, that is typically the end of the personal jurisdiction analysis. Where, as here, however, a litigant seeks to enforce a forum selection clause against a non-signatory, the Court must first determine whether there is a legal basis for doing so.

---

[2] In making its "inextricably intertwined" or "logically tied together" arguments, Plaintiff relies on Demodulation v. Applied DNA Scis., Inc., No. 11-0296, 2011 WL 6756069 (D.N.J. Dec. 22, 2011). After having reviewed that case, this Court finds that it is inapplicable here given the factual distinctions.

"Ordinarily, a party not a signatory to a contract cannot be bound by the terms of that contract.  As a general matter, the Third Circuit is reluctant to enforce a contractual clause against a non-party, unless 'accepted principals of agency or contract' make it appropriate."  Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 10-cv-5321 (WHW), 2014 U.S Dist. LEXIS 65338, * 9 (D.N.J. May 13, 2014) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194, 202 (3d Cir. 2001)); Bedwell Co. v. Camden County Improvement Auth., No. 14-cv-1531 (JEI), 2014 U.S. Dist. LEXIS 95510, *8 (D.N.J. July 14, 2014) ("Except for limited circumstances not present here, a contract cannot define the legal obligations between two entities unless those two entities are parties to the contract.").

In the context of forum selection clauses, courts in this District have typically limited enforcement against non-signatories to situations in which the non-signatory is either: (1) a third-party beneficiary of the contract containing the clause; or (2) so closely related to the contractual relationship at issue that the party should be able to foresee that courts will enforce the clause against it.  See, e.g., Beth Schiffer Fine Photographic Arts, Inc., 2014 U.S. Dist. LEXIS 65338 at *9-10; Donachy v. Intrawest U.S. Holdings, Inc., No. 10-4038 (RMB), 2011 U.S. Dist. LEXIS 79567, *6-7 (D.N.J. July 21, 2011) (collecting cases and noting enforcement of forum selection clauses against related parties and third party beneficiaries); cf. D'Elia v. Grand Caribbean Co., No. 09-cv-1701 (NLH) 2010 U.S. Dist. LEXIS 32230, *10 (D.N.J. Mar. 30, 2010) (noting that a non-party to a contract may enforce a forum selection clause contained in that contract "if that party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound.").  Here, Plaintiff does not contend that Defendant FDB is a third-party beneficiary.  (See generally Pl. Opp. Br., ECF No.

10).  Rather, Plaintiff claims that Defendant FDB is so "closely related" to Defendant Lloyd that it should be subject to the forum selection clause in the Agreement.  (Id.).

In arguing for a broader interpretation of the "closely related" doctrine, Plaintiff relies heavily on several cases from outside this District.  (See Pl. Opp. Br., ECF No. 10, at 11-14). Plaintiff places particular emphasis on cases from the United States District Court for the Eastern District of Pennsylvania.  For example, Plaintiff relies on Synthes, Inc. v. Emerge Med., Inc., 887 F. Supp. 2d 598 (E.D. Pa. 2012), where, in that case, the plaintiff's former employees allegedly violated their non-compete agreements by forming a new company in direct competition with the plaintiff, the court found that a non-signatory who assisted them in that venture was bound, under the "closely related" doctrine, by the forum selection clause contained in those agreements.  Id. at 603-04, 610-16.  The Court finds that Plaintiff's reliance on Synthes is misplaced.  The Synthes court's overall determination that the non-signatory was sufficiently "closely related" to the non-compete agreements at issue, and therefore subject to the forum selection clauses contained therein because he knowingly helped the plaintiff's former employees to breach their agreements and because he was aware that the plaintiff might commence litigation over those breaches, id., is incompatible with the aforementioned body of case law that courts in this District have developed regarding the "closely related" doctrine.  This Court, therefore, does not find the Synthes decision to be persuasive.  Nor does the Court find that the other out-of-District decisions that Plaintiff has cited add to the analysis such that they merit further discussion here.

Several courts in this District have analyzed this issue, however, and their guidance is instructive.  In Affiliated Mortg. Prot., LLC v. Tareen, No. 06-4908 (DRD), 2007 U.S. Dist. LEXIS 5106, **4, 12-15 (D.N.J Jan. 23, 2007), the Hon. Dickinson R. Debevoise, U.S.D.J., found that, where a four-employee corporation and the plaintiff previously entered into a contract that

Case 2:15-cv-03201-JLL-JAD   Document 15   Filed 11/25/15   Page 10 of 16 PageID: 336

contained a forum selection clause, that corporation's employees, who had directly benefitted from that contract by utilizing the sales leads that the plaintiff provided thereunder to obtain commissions, were therefore sufficiently "closely related" to that contractual relationship that it was appropriate for the District Court to subject those employees to the forum selection clause. Judge Debevoise clarified that the employees received a "continuing benefit" under that contract (i.e., the sales leads), and that they were therefore "bound by the forum selection and choice of laws clause because the claims arise out of the contract from which [those employees] derived benefit." Id. **12-13.

In Donachy, 2011 U.S. Dist. LEXIS 79567, the Hon. Renee M. Bumb, U.S.D.J., addressed an analogous situation in which the defendants sought to utilize the "closely related" doctrine to enforce a forum selection clause to which they were not themselves signatories. Those defendants had worked to market and sell certain condominium units to the plaintiffs, who eventually purchased property directly from the condominium developer, non-party Cherokee Limited. Id. at **2-3. In purchasing their units, the plaintiffs entered into contracts with Cherokee Limited, and those contracts contained a mandatory forum selection clause specifying that the Turks & Caicos Islands would have exclusive jurisdiction over all claims arising out of the parties' agreements. Id. at *3. The plaintiffs later filed suit seeking to recover their deposits and other out-of-pocket losses, claiming that they purchased property from Cherokee Limited (which had declared bankruptcy and was therefore not named as a party) in reliance on the defendants' alleged misrepresentations. Id. at **2-4. The defendants sought to enforce the forum selection clauses contained in the agreements between Cherokee Limited and the various plaintiffs, arguing that they were "closely related" to those contractual relationships given their roles in the marketing and sales process. Id. at **6-8. Judge Bumb disagreed, finding that the "closely related" doctrine did

not apply because: (1) the agreements did not reference the defendants; (2) the defendants did not incur any obligations under those agreements; and (3) the contracting parties' were required to perform under the agreements irrespective of the defendants' services (i.e. the agreement specified that any prior marketing-related representations were not incorporated into the agreements).  Id. at *10.  The court also found that the defendants had failed to establish an alternate ground for permitting enforcement, such as that the defendants were acting as agents of the signatory or were third-party beneficiaries of the contracts at issue.   Id.   Finally, Judge Bumb clarified that application of the "closely related" doctrine turns on the extent of a party's connection to the terms of the contract containing the forum selection clause, and that the fact that a party played some role, even an important one, in the overarching factual scenario is insufficient.  Id.  ("Defendants may have been instrumental in soliciting Plaintiffs to enter into agreements with Cherokee, but Defendants' relationship to Plaintiffs is simply not sufficiently related to the Agreement at issue here.").

The Hon. Noel L. Hillman, U.S.D.J.'s, decision in Cambridge Mgmt. Grp., 2013 U.S. Dist. LEXIS 44055, provides further guidance on the limited applicability of the "closely related" doctrine.   In Cambridge, certain law firm defendants sought to avoid application of a forum selection clause on the grounds that they never signed the primary agreement containing that provision.  Id. at **27-28.  Judge Hillman found that, while the defendants were not parties to that primary contract, they did sign an ancillary agreement through which they acknowledged receipt of the primary contract and agreed to discharge certain duties in accordance with the terms of that primary contract.  Id. at **28, 31-33.  Given the explicit cross-referencing and interdependence of the contracts at issue, Judge Hillman found that the law firm defendants were "on notice that terms of the [various contracts] were all necessarily and directly related to the litigation funding

11

transaction in which they participated." Id. at *34. Judge Hillman noted that the law firm defendants' alleged failure to fulfil those contractual obligations formed the basis of the plaintiffs' claims. Id. at *31-32. In turn, given the idiosyncratic circumstances at issue in the case, and the law firm defendants' obvious, direct involvement in the contractual relationships at issue (i.e., the defendants' alleged failure to fulfil certain duties as required under the primary contract containing the forum selection clause), Judge Hillman found it appropriate to apply the forum selection clause to those defendants. Id. at * 34-35.

In PNY Tech., Inc. v. Miller, Kaplan, Arase & Co., LLP., No. 14-4150 (ES), 2015 U.S. Dist. LEXIS 38140 (D.N.J. Mar. 24, 2015), the Hon. Michael A. Hammer, U.S.M.J., permitted a non-signatory to enforce a forum selection clause under similar circumstances. In that case, an underlying licensing agreement between PNY Tech. Inc. and SanDisk permitted SanDisk to retain an independent party to audit PNY Tech. Inc.'s royalty payments, and contained a forum selection clause requiring any litigation concerning that agreement to be brought in the United States District Court for the Northern District of California. Id. at **2, 7. Though the agreement did not identify a particular auditor, it "define[d] all of [the auditor's] responsibilities" and dictated the logistics of the audit process. Id. at *18. Judge Hammer ultimately found that, though PNY Tech., Inc. sued the auditor for breach of an interrelated non-disclosure agreement, and not the licensing agreement itself, the non-signatory auditor could enforce the forum selection clause contained in the licensing agreement in accordance with the "closely related" doctrine. (Id. at *18-21). In reaching that decision, Judge Hammer stressed that the auditor had undertaken duties set forth in the underlying licensing agreement. Id. at *21 ("Because MKA's duties and interests as the 'independent Third Party accounting firm' arise from the License Agreement, MKA is closely related to the contractual relationship between SanDisk and PNY.").

In <u>Beth Schiffer Fin Photographic Arts, Inc.</u>, 2014 U.S. Dist. LEXIS 65338, the Hon. William H. Walls, U.S.D.J., addressed the "closely related" doctrine, which His Honor explicitly labeled as a "narrow one." <u>Id.</u> at *13.  The plaintiff alleged claims regarding its purchase (through an American dealer) of a photographic processing and printing machine manufactured and marketed by an Italian entity.  <u>Id.</u> at **1-3.  The transaction between the Italian manufacturer and the American dealer appears to have been governed by a forum selection clause requiring any disputes concerning that transaction to be brought in Italy.  <u>Id.</u> at **1-2, 4.  In moving for summary judgment, the Italian manufacturer argued, in part, that the non-signatory plaintiff was also bound by the forum selection clause under the "closely related" doctrine, as it had received certain benefits under the manufacturer/dealer contract and, therefore, the plaintiff could not maintain any of its claims in the United States District Court.  <u>Id.</u> at **7-8.  Judge Walls noted that "[c]ourts in this district typically find that non-signatories are 'closely related' only in the context of an individual non-signatory who is employed by – or the principal of – a corporate entity which is a signatory."  <u>Id.</u>  (citations omitted).  As the plaintiff did not fit into either of those "narrow" categories, Judge Walls found that the "closely related" doctrine was inapplicable and that the plaintiff was not subject to the forum selection clause.  <u>Id.</u> at **13-14.

When considering the facts of this case in light of these decisions, this Court finds that the closely related doctrine is simply not applicable here.  Unlike in <u>Affiliated Mortg. Prot., LLC</u>, where Judge Debevoise determined that the "closely related" doctrine applied to non-signatories who derived benefits from the underlying contract itself, Plaintiff essentially contends that Defendant FDB benefitted solely from Defendant Lloyd's <u>breach</u>.[3]  (<u>See, e.g.</u>, Compl., ECF No.

---

[3] Notably, Plaintiff alleges that Defendant Lloyd's alleged misconduct "demonstrates that [he is] engaged in a continuous <u>breach</u> of [his] non-solicitation, confidentiality and common law obligations and, also, that [his] misconduct has caused, and is continuing to cause, substantial harm

1, ¶¶ 17-22).  Similarly, unlike the situations in <u>Cambridge</u> or <u>PNY Tech., Inc</u>, Defendant FDB did not enter into a separate contract under which it agreed to undertake responsibilities in relation to the Agreement between Plaintiff and Defendant Lloyd.  Moreover, application of the closely related doctrine would also be inappropriate under the court's rationale in <u>Beth Schiffer Fin Photographic Arts, Inc.</u>, as Defendant FDB is clearly not an employee of Defendant Lloyd, who, besides Plaintiff, was the only signatory to the Agreement.

In fact, Plaintiff alleges that the converse is true and that Defendant Lloyd now works for Defendant FDB.  (<u>See, e.g.</u>, Compl., ECF No. 1, ¶ 22).  In <u>Donachy</u>, the court found that, despite the plaintiffs' allegations that the defendants tortiously caused them to enter into the contracts at issue, the "closely related" doctrine did not apply, because the defendants were not otherwise sufficiently connected to those contracts.  2011 U.S. Dist. LEXIS 79567 at *10.  The same logic applies here, although this case involves the other end of the contractual relationship (i.e., its breach rather than its formation).  Other than Plaintiff's claim that Defendant FDB tortiously caused Defendant Lloyd to breach the Agreement or otherwise tortiously assisted him in doing so, Defendant FDB has no connection to that contract.

Defendant FDB was not a party to or otherwise mentioned in the Agreement.  Defendant FDB was not required to undertake any obligations nor entitled to obtain any benefits under that contract (either directly or through some related, ancillary agreement).  Defendant FDB's only relationship to the Agreement is that it allegedly hired or otherwise associated itself with Defendant Lloyd one year after Defendant Lloyd signed his contract with Plaintiff.  Plaintiff argues that Defendant FDB is "closely related" to the Agreement because it was aware of the agreement

_____

to [Plaintiff's] business, reputation and customer relations."  (Compl., ECF No. 1, ¶ 22) (emphasis added).

between Plaintiff and Defendant Lloyd and "[d]espite this awareness, [Defendant] FDB pursued and hired [Defendant] Lloyd in order to obtain [Defendant] Lloyd's assistance to solicit several of [Plaintiff's] clients, as well as to gain confidential information and trade secrets disclosed to [Defendant] Lloyd during his employment with [Plaintiff] -- all in violation of the Agreement." (Pl. Opp. Br., ECF No. 10, at 13-14).  Plaintiff further argues that "given [Defendant] FDB's expressed knowledge of the Agreement and the subsequent actions it took -- that [Defendant] FDB was aware that it was so closely related to the Agreement such that it was 'foreseeable' that it would be hailed into court in New Jersey pursuant to the Agreement's forum selection clause" thereby subjecting it to this Court's jurisdiction.  (Id. at 14).  Plaintiff's interpretation of the "closely related" doctrine is entirely too expansive and would potentially subject every defendant alleged to have tortiously interfered with a contract to any forum selection clause or arbitration provision contained in that contract.

This Court declines to adopt such an expansive view of this decidedly "narrow" doctrine. See Beth Schiffer Fin Photographic Arts, Inc., 2014 U.S. Dist. LEXIS 65338 at *13.  The Court finds that, in light of the case law established in this District, the "closely related" doctrine is inapplicable in the circumstances of this case and cannot serve as a means of enforcing the forum selection clause contained in the Agreement against Defendant FDB.  As Plaintiff has not articulated any other basis for exercising personal jurisdiction over Defendant FDB, (see generally Pl. Opp. Br., ECF No. 10), the Court respectfully recommends that the District Court grant Defendant FDB's motion to dismiss.[4]

---

[4] Plaintiff argues that dismissal of Plaintiff's Complaint against Defendant FDB "is not warranted because it would be contrary to judicial efficiency and the interest of justice." (Pl. Opp. Br., ECF No. 10, at 14 n.6).  Specifically, if Defendant FDB's motion to dismiss is granted and Plaintiff refiled this matter against Defendant FDB in Massachusetts, "dual litigations would be pending concerning the very same issues, the very same parties, the very same witnesses, and the very same

As the Court has determined that Plaintiff's claims against Defendant FDB should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court need not reach that Defendant FDB's argument in favor of transfer, (Def. Br., ECF No. 5-1, at 12), or Plaintiff's argument regarding the reasonableness of the forum selection clause.  (Pl. Opp. Br., ECF No. 10, at 18).

### III.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant FDB's Motion to Dismiss, (ECF No. 5), be **GRANTED.**

        s/ Joseph A. Dickson
**JOSEPH A. DICKSON, U.S.M.J.**

cc:     Hon. Jose L. Linares, U.S.D.J.

---

books and records. Such a result would only lead to a fragmented litigation, creating unnecessary expense, adding to court congestion and risking inconsistent rulings." (Id.).  This Court recognizes that dismissing the claims against Defendant FDB would require Plaintiff to pursue claims regarding the same subject matter in multiple jurisdictions if Plaintiff insists on litigating its claims against Defendant Lloyd in New Jersey.  Judicial efficiency is not, however, a proper justification to subject Defendant FDB to this Court's jurisdiction.  To hold otherwise would fly in the face of well-established jurisprudence.  See supra Part II.